**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Matthew D. Barrett, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>Industrial Service Solutions, LLC d/b/a Industrial Service Solutions, LLC of Delaware, and IPEC, Inc.<br><br>Defendants. | Civil Action No. 4:25-cv-3699 |

## PLAINTIFF'S OPPOSED MOTION FOR NOTICE UNDER *SWALES*

Plaintiff Matthew D. Barrett files this Motion for Notice Under *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), pursuant to the federal Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 216(b). A brief setting forth the basis of this Motion is attached and incorporated by reference as if set forth fully herein.

Pursuant to Local Rule 7.7, the evidence supporting this Motion which does not appear of record is filed hereto as exhibits to this Motion.

Dated: May 28, 2026

Respectfully submitted,

By:   s/Melinda Arbuckle
       Melinda Arbuckle
       State Bar No. 24080773
       marbuckle@wageandhourfirm.com
       Ricardo J. Prieto
       State Bar No. 24062947
       rprieto@wageandhourfirm.com
       Wage and Hour Firm
       5050 Quorum Drive, Suite 700

Dallas, Texas 75254
(214) 489-7653 – Telephone
(469) 319-0317 – Facsimile

ATTORNEYS FOR PLAINTIFF AND PUTATIVE
COLLECTIVE ACTION MEMBERS

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendants regarding this Motion via email on May 28, 2026. Defendants oppose the relief requested in this Motion.

s/Melinda Arbuckle
Melinda Arbuckle

## CERTIFICATE OF SERVICE

On May 28, 2026, I filed the foregoing document with the Clerk of Court using the CM/ECF method of the Court. I certify that all counsel of record were served electronically thereby.

s/Melinda Arbuckle
Melinda Arbuckle

ii

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    NATURE AND STAGE OF PROCEEDING ......................................................2

III.   FACTUAL BACKGROUND ...............................................................................3

     A.    Defendants' Business Operations ............................................................3

     B.    Defendants' Pay Policy and/or Practice to Only Pay for Set Shifts Resulted in Undercompensating Overtime Wages to Manual Labor Employees. ..................4

     C.    Defendants' Violative Pay Policy Applied Equally to All Hourly-Paid Manual Labor Employees Working Fixed 12-Hour Shifts. ....................................4

IV.   STATEMENT OF THE ISSUE..........................................................................6

V.    SUMMARY OF THE ARGUMENT ..................................................................6

VI.   ARGUMENT AND AUTHORITY .....................................................................8

     A.    Relevant Legal Standard ..........................................................................8

          1.    Prior to 2021, Courts in the Fifth Circuit Applied *Lusardi*'s Lenient Conditional Certification Standard. ..............................................8

          2.    In *Swales*, The Fifth Circuit Rejects *Lusardi* and Gives Courts Additional Flexibility to Issue Notice to Putative Collective Action Members. ..................................................................9

          3.    District Courts Applying *Swales* Still Typically Order Dissemination of Notice. ..........................................................12

     B.    Notice Should Issue to the Putative Collective Action Members. ..........................14

          1.    Defendants' Uniformly Applicable Pay Policy and/or Practice of Failing to Pay for All Time Worked Violates the FLSA, and the Court Should Order Notice to All of Defendants' Hourly-Paid Laborer/Mining Employees. ..........................................................14

          2.    Defendants' Defenses Can Be Asserted and Determined on a Collective Basis. ..................................................................15

C.    Plaintiff's Proposed Notice, Consent Form, and Procedure for Dissemination of Notice of the Pendency of this Lawsuit Are Proper. .................17

VII.    CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) ................................................................................................16

*Badon v. Berry's Reliable Resource, LLC*,
No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) ..................12

*Beliz v. W.H. McLeod & Sons Packing Co.*,
765 F.2d 1317 (5th Cir. 1985) ................................................................................11

*Blake v. Hewlett-Packard Co.*,
No. 4:11-CV-592, 2013 WL 3753965 (S.D. Tex. 2013) .........................................10

*Britt v. Mississippi Farm Bureau Cas. Ins. Co.*,
No. 1:18-CV-38-GHD-DAS, 2022 WL 331210 (N.D. Miss. Feb. 3, 2022)............11

*Clarke v. Convergys Customer Mgmt. Grp., Inc.*,
370 F. Supp. 2d 601 (S.D. Tex. 2005) ....................................................................11

*Clemons v. PHB, Inc.*,
No. 3:17-CV-0417-B, 2018 WL 4539116 (N.D. Tex. Sept. 21, 2018) ...................10

*Collins v. Pel-State Bulk Plant, LLC*,
No. MO:20-CV-00083-DC-RCG, 2021 WL 5234968 (W.D. Tex. Sept. 29,
2021) ........................................................................................................................16

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*,
No. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ................................9

*Flores v. FS Blinds, L.L.C.*,
73 F.4th 356 (5th Cir. 2023) ...................................................................................16

*Hernandez v. Pritchard Indus. (Southwest), LLC*,
No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) ...............12

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989).................................................................................................8

*Integrity Staffing Sols., Inc. v. Busk*,
574 U.S. 27 (2014).......................................................................................7, 15, 16

*Lang v. DirecTV*,
No. 10-1085 "G" (1), 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011) .............10

*Lusardi v. Xerox Corp.*,
　118 F.R.D. 351 (D.N.J. Nov. 5, 1987) ..................................................................8, 9, 10, 13

*McKnight v. D Houston, Inc.*,
　756 F. Supp. 2d 794 (S.D. Tex. 2010) .................................................................................10

*Miles v. HSC-Hopson Servs. Co, Inc.*,
　625 Fed. App'x 636640 (5th Cir. 2015) ...........................................................................7, 15

*Mooney v. Aramco Servs., Co.*,
　54 F.3d 1207 (5th Cir. 1995) ................................................................................................8

*Olibas v. Barclay*,
　838 F.3d 442 (5th Cir. 2016) ..............................................................................................11

*Parker v. Silverleaf Resorts, Inc.*,
　No. 3:14-CV-2075-B, 2017 WL 1550522 (N.D. Tex. May 1, 2017) ....................................10

*Roberts v. Baptist Healthcare Sys., LLC*,
　No. 1:20-CV-00092-MAC, 2022 WL 4089819 (E.D. Tex. Aug. 9, 2022).............................18

*Segovia v. Fuelco Energy LLC*,
　No. SA-17-CV-1246-JKP, 2021 WL 2187956 (W.D. Tex. May 28, 2021) ...........................17

*Serrano v. Republic Servs., Inc.*,
　No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017)................................17

*Soto v. Marquez Constr. & Maint., LLC*,
　No. 20-CV-00101, 2021 WL 3832836 (W.D. Tex. Apr. 9, 2021) ...................................12, 14

*Steiner v. Mitchell*,
　350 U.S. 247 (1956).........................................................................................................7, 15

*Sterling v. Greater Hous. Transp. Co.*,
　No. CV H-20-910, 2021 WL 2954663 (S.D. Tex. July 14, 2021)........................................12

*Swales v. KLLM Transp. Servs., L.L.C.*,
　985 F.3d 430 (5th Cir. 2021) .................................................................................... *passim*

*T.S. v. Burke Found.*,
　521 F. Supp. 3d 691 (W.D. Tex. 2021) (Pitman, J.)...................................................12, 13, 17

*Tice v. AOC Senior Home Health Corp.*,
　826 F. Supp. 2d 990 (E.D. Tex. 2011)...................................................................................9

*Tolentino v. C & J Spec-Rent Servs. Inc.*,
　716 F. Supp. 2d 642 (S.D. Tex. 2010) ...............................................................................8, 9

vi

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................................................11, 17

*Young v. Energy Drilling Co.*,
    534 F. Supp. 3d 720 (S.D. Tex. 2021) ...................................................................13

*Young v. Energy Drilling Co.*,
    No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) ........................12, 13

**Statutes and Regulations**

29 U.S.C. § 216(b) ..........................................................................................2, 3, 6, 8

29 C.F.R. § 541.3(a).......................................................................................14, 16

29 C.F.R. § 785.27 .........................................................................................7, 15

29 CFR § 785.38 .............................................................................................7, 15

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR NOTICE UNDER *SWALES***

## I.    INTRODUCTION

Through this Motion, Plaintiff Matthew Barrett ("Plaintiff" or "Barrett") seeks leave to send notice of this action to a collective of laborer/mining employees of Defendant Industrial Service Solutions, LLC d/b/a Industrial Service Solutions, LLC of Delaware, and Defendant IPEC, Inc. (collectively, "Defendants"). The proposed collective consists of hourly paid workers who performed substantially similar job duties without compensation for pre- and postliminary work at Defendants' customers' cement plant/rock quarry job sites because of Defendants' policy and/or practice requiring them to perform compensable work off-the-clock, paying them only for set shifts. Plaintiff seeks notice so that the collective action members may learn of their right to join this lawsuit for unpaid overtime and other damages under the FLSA.

The parties engaged in such limited discovery as they agreed was appropriate under *Swales*,[1] and Plaintiff has adduced the evidence required to establish the existence of a class of similarly situated employees. These employees are similarly situated in all material respects: their duties all involved manual labor, they were all paid hourly, they all typically worked more than forty hours per week, and they were all subject to the same pay practice of being paid only for scheduled shifts while performing compensable off-the-clock work. That work included preliminary tasks such as donning safety gear kept at the jobsite, gathering tools and equipment, walking from the tool trailer to the worksite, and attending mandatory safety meetings, as well as postliminary tasks such as doffing safety gear and returning tools and equipment. Because all

---

[1]    *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

1

workers were paid hourly wages and performed similar duties, Defendants cannot rely on any materially different exemptions or other individualized defenses to defeat collective treatment.

In *Swales*, the Fifth Circuit noted the relatively low bar to the similarly situated inquiry in such cases:

> For example, in a **donning and doffing case**, notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job. So, a district court will not likely need mountains of discovery to decide whether notice is appropriate.

985 F.3d at 441-442 (emphasis added).

Plaintiff has more than adequately satisfied the lenient standard articulated in *Swales* for donning-and-doffing cases. Plaintiff Barrett and opt-in Plaintiff Owens worked as hourly-paid laborer/mining employees at jobsites in Texas, Kansas, Nebraska, Oklahoma, Wyoming, Ohio, North Carolina, Michigan, and Iowa, and both were required to work "off-the-clock." Given that the claims of these laborers/mining employees may be determined jointly, under 29 U.S.C. § 216(b), notice should issue to them so that they may decide whether to join the lawsuit.

## II.    NATURE AND STAGE OF PROCEEDING

On August 7, 2025, Plaintiff filed this lawsuit seeking damages for Defendants'[2] failure to pay himself and similarly situated employees one and one-half times their respective regular rates of pay for all hours worked over forty (40) in each workweek. (ECF No. 1.) The parties engaged in limited written discovery, and no party solicited oral depositions.

Plaintiff has adduced sufficient evidence to demonstrate the existence of a class of similarly situated current and former laborer/mining employees of Defendants who are/were paid on an

---

[2]    Plaintiff later joined Defendant IPEC, Inc. (ECF No. 23.)

hourly basis without compensation for compensable tasks such as donning and doffing safety apparel, gathering tools and equipment, traveling from the tool trailer to the job site, participating in pre-shift safety meetings, and removing safety apparel and returning equipment (the "Collective Action Members"). Accordingly, since preliminary discovery makes plain that Plaintiff and the Collective Action Members' claims can proceed collectively, Plaintiff requests issuance of Court-authorized notice to the Collective Action Members under 29 U.S.C. § 216(b).

## III.    FACTUAL BACKGROUND

### A.    Defendants' Business Operations

Defendants' business operations involve, amongst other things, providing its customers— manufacturing plants/mining operation businesses—with crews that assist with the fabrication, modification, and maintenance of heavy machinery, particularly in support of the cement manufacturing industry.[3] Plaintiff Barrett and opt-in Plaintiff Owens worked as hourly-paid employees performing manual labor duties for Defendants as crew members on Defendants' and their customers' construction projects.[4] Plaintiff Barrett and opt-in Plaintiff Owens typically worked over forty (40) hours in a workweek,[5] and payroll records[6] produced by Defendants reflect consistent overtime hours worked.

---

[3]    *See* Ex. A – IPEC Webpage; https://ipecgroup.com/ (last accessed May 28, 2026) (describing "nonunion" "field service team" specializing in "new construction, rebuilds, modifications, and outages of process equipment in industrial facilities nationwide" with a concentration in "cement processing"). *See also* Ex. B - Barrett Decl. ¶ 2 ("Defendants are engaged in supporting mining operations, especially regarding cement manufacture through rock quarries, across the United States."); Ex. C - Owens Decl. ¶ 2.

[4]    *See* Ex. B - Barrett Decl., ¶ 2; Ex. C - Owens Decl., ¶ 2.

[5]    *See* Ex. B - Barrett Decl., ¶ 2; Ex. C - Owens Decl., ¶ 2.

[6]    Ex. D - IPEC 0000032-52 (Barrett Pay Summaries).

**B.    Defendants' Pay Policy and/or Practice to Only Pay for Set Shifts Resulted in Undercompensating Overtime Wages to Manual Labor Employees.**

Defendants compensated manual labor employees[7] like Plaintiff Barrett and opt-in Plaintiff Owens for a fixed schedule based on a twelve-hour shift each day worked.[8] However, Defendants required their laborer employees to complete pre- and post-shift duties without compensation. For instance, Defendants required laborers to don protective safety apparel maintained at the tool trailer; gather tools and equipment from the tool trailer; travel from the tool trailer to a jobsite a substantial distance away; and engage in a pre-shift safety meeting before their fixed schedule began without providing compensation for these compensable work tasks.[9] These pre- and post-shift "off-the-clock" duties, often totaling to as much as an hour and a half of unpaid time per day, were required by Defendants, and laborers were subject to verbal warnings and/or being sent home without compensation for failure to complete these duties prior to the beginning of their paid shifts.[10] Given Plaintiff and the putative Collective Action Members typically worked over forty (40) hours in a workweek, this resulted in unpaid overtime compensation.

**C.    Defendants' Violative Pay Policy Applied Equally to All Hourly-Paid Manual Labor Employees Working Fixed 12-Hour Shifts.**

Plaintiff Barrett and opt-in Plaintiff Owens have first hand personal knowledge that the putative Collective Action Members frequently worked hours over forty (40) in a workweek given what they know of Defendants' set schedule and their observations of other crew workers on the

---

[7]    These employees encompass a myriad of job titles, including welder, welder craftsman, millwright, and general laborer, but they all shared similar job duties of performing manual labor tasks to further construction projects. *See* Ex. B - Barrett Decl., ¶ 2.

[8]    *See* Ex. B - Barrett Decl., ¶¶ 2, 5-9, 10; Ex. C - Owens Decl., ¶¶ 2, 3, 5-7.

[9]    *Id.*

[10]    *Id.*

4

job site.[11] They further have firsthand knowledge that Defendants' pay policy and/or practice of paying only for a set shift and not for pre- and post-liminary tasks like donning and doffing, obtaining and transporting necessary tools and equipment, travel all in a day's work, and pre-shift meetings, applied equally to all manual labor employees.[12]

Further, Plaintiff requested information through Interrogatories to Defendant IPEC for any reasons Plaintiff and the putative Collective Action Members would be dissimilarly situated, and Defendants objected and provided no reasons they would be dissimilarly situated under *Swales*.[13] Defendants have not alleged any category or subset of hourly-paid manual labor employees were subject to arbitration, and Defendants' website admits there are no union issues that could complicate the collective treatment of its manual labor employees.[14] Finally, Defendants must acknowledge that Plaintiff and the putative Collective Action Members were non-exempt under the FLSA, inasmuch as they were all performing "blue collar" work and paid hourly with overtime premium pay for set hours worked over forty (40).

Plaintiff and the Collective Action Members are unified in all respects relevant to the *Swales* similarly situated analysis in that they were all hourly-paid, non-exempt manual laborers who may stand together to seek damages for time spent working "off-the-clock." Defendants may argue that the Court cannot determine "off-the-clock" claims collectively. But, as discussed further in this Brief, Plaintiff and the Collective Action Members can be determined collectively notwithstanding any slight differences in the amounts of time spent by the Collective Action Members in completing various compensable tasks.

---

[11]  *See* Ex. B - Barrett Decl., ¶ 11-13; Ex. C - Owens Decl., ¶ 8.

[12]  *Id.*

[13]  Ex. E - Def. IPEC's Interrog. Answers Nos. 5, 6.

[14]  *See* Ex. A - IPEC Webpage; https://ipecgroup.com/ (last accessed May 28, 2026)

5

## IV.    STATEMENT OF THE ISSUE

Where Plaintiff Barrett and opt-in Plaintiff Owens worked as hourly-paid "blue collar" manual laborers for Defendants at its customers' jobsites across the country, and were only ever paid for their set shifts while Defendants required compensable work including but not limited to donning and doffing and "travel all in a day's work" to be completed "off-the-clock," should the Court order notice of this lawsuit to all other hourly-paid "blue collar" workers so that they may decide whether they would like to participate in the lawsuit? Because Plaintiff has made the requisite showing under 29 U.S.C. § 216(b) and *Swales*—the workers share common enough job duties, Defendants paid all workers on an hourly basis, and their claims and Defendants' defenses may all be determined collectively—notice must issue.

The Court's decision is interlocutory, but the Fifth Circuit will review for abuse of discretion. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 439 (5th Cir. 2021).

## V.    SUMMARY OF THE ARGUMENT

Plaintiff satisfies the relevant *Swales* standard to permit issuance of notice to the Collective Action Members, defined as:

> **All current and former hourly-paid laborer/mining employees of Defendants who worked over forty (40) hours in any workweek at any time during the three (3) years preceding the date of filing this Action to the present.**

The Fifth Circuit has noted the relatively low bar to the similarly situated inquiry in cases such as this:

> For example, in a **donning and doffing case**, notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job. So, a district court will not likely need mountains of discovery to decide whether notice is appropriate.

985 F.3d at 441-442 (emphasis added).

6

Here, Plaintiff demonstrates his entitlement to notify the putative Collective Action Members of this lawsuit based upon evidence that is appropriate per *Swales*: his substantial pleadings and declarations[15] from Plaintiff Barrett and opt-in Plaintiff Owens that they are similarly situated to the Collective Action Members in all relevant respects (i.e., manual labor job duties; hourly method of compensation), coupled with paystubs from Defendants verifying Plaintiff Barrett's testimony that he worked overtime hours,[16] and Defendants' failure to identify even a single reason Plaintiff might be dissimilarly situated from any putative Collective Action member in written discovery[17] (e.g., no evidence from Defendants of the existence of any "threshold" issues such as arbitration or presence of a collective bargaining agreement applicable to some but not all Collective Action Members).

Because Plaintiff has substantially alleged violations of the FLSA, specifically failure to pay for pre- and post-shift donning and doffing,[18] travel time between the tool trailer where Plaintiff and putative Collective Action Members gathered cumbersome tools and their jobsite,[19] and participation in mandatory safety meetings[20] that are applicable to all of the Collective Action Members, regardless of where they worked for Defendants, Plaintiff's Motion should be granted, and the Court should approve Plaintiff's proposals for the method and procedure of transmitting notice under *Swales*.

---

[15]   Exs. B - Barrett & Owens Decls.

[16]   Ex. D - IPEC 0000032-52 (Barrett Pay Summaries).

[17]   Ex. E - Def. IPEC's Interrog. Answers Nos. 5, 6.

[18]   *Steiner v. Mitchell*, 350 U.S. 247, 333-34 (1956); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 34 (2014).

[19]   29 C.F.R. § 785.38; *Miles v. HSC-Hopson Servs. Co, Inc.*, 625 Fed. App'x 636640 n.1 (5th Cir. 2015).

[20]   29 C.F.R. § 785.27.

## VI.    ARGUMENT AND AUTHORITY

### A.    Relevant Legal Standard

Under the FLSA, an employee may bring an action for violation of the minimum wage provisions either individually or as a collective action on behalf of herself and other employees "similarly situated." *See* 29 U.S.C. § 216(b). Putative collective action members can "opt-in" to the litigation once they receive notice. *See id.* Courts have discretion in deciding whether and how to issue notice to putative collective action members so that they may make an informed decision of whether they wish to participate in pending litigation. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

#### 1.    Prior to 2021, Courts in the Fifth Circuit Applied *Lusardi*'s Lenient Conditional Certification Standard.

Prior to 2021, district courts in this Circuit typically applied *Lusardi*,[21] which adopted a two-step approach to certification of collective action cases. Courts first applied a lenient standard at an early stage of litigation prior to substantial discovery to determine whether to conditionally certify the case and issue notice to putative collective action members. Later, when discovery was largely complete, courts looked to the second step—whether the case should continue to trial as a collective or be decertified. *Id.* at 354. *See also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (describing the two-step approach).

*Lusardi* permitted conditional certification and issuance of notice to putative collective action members where a plaintiff showed that (1) there was "a reasonable basis for crediting the assertion that aggrieved individuals exist"; and (2) "aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Tolentino v. C & J Spec-*

---

[21]    *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. Nov. 5, 1987).

8

*Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010). Some courts required a third showing that other aggrieved individuals were interested in joining the lawsuit, but others rejected the requirement as contrary to the FLSA's remedial purposes. *Compare id. with Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at \*3 (S.D. Tex. Dec. 11, 2008). Because of the lack of evidence typically before a court, the lenient first stage standard required little more than the substantial allegations that the putative collective action members "were [together] the victims of a single decision, policy, or plan." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011) (citing *Mooney*, 54 F.3d at 1214).

    **2.**    **In *Swales*, The Fifth Circuit Rejects *Lusardi* and Gives Courts Additional Flexibility to Issue Notice to Putative Collective Action Members.**

In 2021, the Fifth Circuit rejected *Lusardi* and set a new standard for issuance of notice to potential collective action members in *Swales*.[22] In *Swales*, the determination made by the district court was whether to issue notice to potentially misclassified independent contractors. *Id.* The Fifth Circuit found that *Lusardi* did not provide necessary flexibility in factually complex cases to determine whether notice should issue, particularly where some discovery has occurred. *Id.* at 439-440. Indeed, courts applying *Lusardi* struggled when a plaintiff sought conditional certification

---

[22]   *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

later in litigation, after more than minimal discovery had occurred. Some courts stuck with the lenient standard,[23] others, like the district court in *Swales*, required some intermediate showing.[24]

In rejecting *Lusardi*, the Fifth Circuit now requires a district court to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Swales*, 985 F.3d at 441. Thereafter, the district court must consider all of the evidence before it to determine whether and to whom notice should be issued. *Id.* at 442. In the case of potentially misclassified independent contractors (which is not the issue before the Court today), *Swales* provides additional guidance as to whether a group might be "too diverse" to be similarly situated, *i.e.*, the case cannot proceed on a collective basis.

While *Swales* rejected the "rigidity" of *Lusardi*, it maintained certain facets of the collective action certification analysis. For instance, while *Swales* requires courts to take an early

---

[23] *See, e.g.*, *Lang v. DirecTV*, No. 10-1085 "G"(1), 2011 WL 6934607, at \*7 (E.D. La. Dec. 30, 2011) (refusing to apply a heightened standard even after the defendants had produced thousands of records over the course of twenty months, in part because the Fifth Circuit had not yet indicated that discovery would warrant a heightened standard); *McKnight v. D Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (applying lenient standard even where parties had deposed plaintiffs and one defense fact witness because significant additional discovery remained to be completed).

[24] *See Swales*, 985 F.3d at 438 ("Recognizing the significant discovery that had already taken place, the district court applied a Goldilocks version of *Lusardi*, something in between lenient and strict. It decided that Plaintiffs and Opt-ins needed to show "more than minimal evidence" of their similarities to justify conditional certification."). *See, also, e.g.*, *Clemons v. PHB, Inc.*, No. 3:17-CV-0417-B, 2018 WL 4539116, at \*3 (N.D. Tex. Sept. 21, 2018) (grappling with decision whether to apply lenient or intermediate standard where plaintiffs were deposed but defendants produced little written discovery; ultimately applying lenient standard); *Parker v. Silverleaf Resorts, Inc.*, No. 3:14-CV-2075-B, 2017 WL 1550522, at \*5-6 (N.D. Tex. May 1, 2017); (noting tension amongst district court decisions applying *Lusardi* in the face of significant discovery; applying heightened standard); *Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 WL 3753965, at \*5 (S.D. Tex. 2013) ("Given the extent of the inquiry into the issue of collective certification already conducted, the Court considers it appropriate to use an intermediate approach: following the two-step process and imposing a heightened evidentiary standard commensurate with the opportunity to conduct discovery.").

role in determining which facts are relevant to determine *whether* merits decisions can be resolved collectively, it made clear "considering, early in the case, whether merits questions can be answered collectively has nothing to do with *endorsing* the merits." *Id.* at 442 (emphasis added).

Furthermore, *Swales* did not disturb prior holdings regarding the "similarly situated" analysis. Courts applying *Swales* still refer back to pre-*Swales* cases when determining whether the collective action members are similarly situated because they were "all subjected to a common policy, plan, or practice." *See, e.g.*, *Britt v. Mississippi Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38-GHD-DAS, 2022 WL 331210, at *3 (N.D. Miss. Feb. 3, 2022) (citing *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017)).

Finally, *Swales* did not suddenly convert issues related to the extent of damages into individualized issues which would preclude issuance of notice to putative collective action members. *See, e.g.*, *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (rejecting Defendant's contention that all "off-the-clock" cases are so inherently individualized as to defeat collective treatment, and reserving determination of damages and merits). Similarly, *Swales* did not (could not), disturb the Supreme Court's ruling supporting certification where such issues were susceptible of proof by representative samples in *Tyson*,[25] nor did the Fifth Circuit disturb its own prior rulings establishing a plaintiff's right to establish liability and damages through representative evidence.[26]

---

[25]   *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016).

[26]   *See, e.g.*, *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) ("Estimates may come from representative testimony, and the '[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.' *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985) (citations omitted).").

Instead, *Swales* simply empowers district courts to rigorously consider all available evidence of whether merits determinations *can be reached* for a group of similarly situated employees *from the outset of a case* before issuing notice of the lawsuit to those putative collective action members. *See Sterling v. Greater Hous. Transp. Co.*, No. CV H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021). Most critically, the evidence needed to make this showing will vary from case to case. *Swales*, 985 F.3d at 441-442.  In some cases, "notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiff's [and potential opt-in plaintiffs'] employment situations […]. *Id.* [In other cases,] such as [when the plaintiff and potential opt-in plaintiffs have demonstrably different work experiences, district courts] will necessarily need more discovery to determine whether notice is going out to those 'similarly situated.'" *Id.*

**3.  District Courts Applying *Swales* Still Typically Order Dissemination of Notice.**

Since *Swales*, district courts in the Fifth Circuit have typically still authorized notice to putative collective action members early in litigation. *See, e.g.*, *Young v. Energy Drilling Co.*, No. Civ. A. 4:20-cv-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021) (granting certification of a collective action following *Swales*); *Soto v. Marquez Constr. & Maint., LLC*, No. 20-CV-00101, 2021 WL 3832836, at *2 (W.D. Tex. Apr. 9, 2021); *T.S. v. Burke Found.*, 521 F. Supp. 3d 691 (W.D. Tex. 2021) (same); *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A. 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) (same); *Badon v. Berry's Reliable Resource, LLC*, No. Civ. A. 19-cv-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021) (affirming certification of a collective action following *Swales*).

For instance, in *Young*,[27] the plaintiff sought redress for his employer's failure to include non-discretionary bonuses in his regular rate of pay when calculating overtime premium pay owed to him and the putative collective action members. The defendant argued that the proposed class was facially overbroad as it was not limited by location, nor by job title, specific types of bonus payments received, or whether the bonuses were included in the putative collective action members' respective regular rates of pay. *Id.* at 723. The court disagreed with the defendant, reasoning:

> Young has presented evidence that rig managers, drillers, derrickmen, motormen, floormen, and toolpushers all were paid what he alleges are non-discretionary Safety and Beat the Curve bonuses. Whether employees are similarly situated for purposes of the claims in this case turns on whether the Safety and Beat the Curve bonuses are "non-discretionary" and required to be included in employees' regular rate of pay for purposes of calculating overtime pay. […] Based on the evidence presented by [the plaintiff]—including the company pay policy alleged to have been applied universally to the listed job positions—the non-discretionary nature of the bonuses does not vary among job titles, duties, or location. Thus, whether the employees in the identified positions were subjected to the same pay practice as Young, and therefore similarly situated, does not depend on the employees' specific job duties or where the employee worked.

*Id.* at 724-25 (citing *Baucum v. Marathon Oil Corp.*, No. H-16-3278, 2017 WL 3017509, at *8 (S.D. Tex. July 14, 2017) (employees in different jobs and with different job titles can be subject to the same pay policy and therefore meet the threshold for conditional certification under *Lusardi*); *Minyard v. Double D Tong, Inc.*, No. 16-CV-00313, 2017 WL 5640818, at *2 (W.D. Tex. 2017) (reconsidering prior denial in part of conditional certification and granting conditional certification under *Lusardi* to proposed class because "[a] class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations of the case.")).

---

[27] *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720 (S.D. Tex. 2021).

Similarly, in *Soto*,[28] the plaintiffs alleged that the defendant paid its rig welder employees additional hourly "rig pay," which was not included in the regular rate of pay when calculating overtime premium wages due to the rig welders in violation of the FLSA. There, the court held that, as there were "no apparent 'potentially dispositive, threshold matters," such as arbitration agreements, misclassification arguments, etc.," the case could proceed on a collective basis based on only limited discovery as the pleadings and declarations showed the plaintiff and putative collective action members shared "the same job titles, performed the same job duties, and were subject to the same expectations." *Id.* at *2.

**B.      Notice Should Issue to the Putative Collective Action Members.**

**1.      Defendants' Uniformly Applicable Pay Policy and/or Practice of Failing to Pay for All Time Worked Violates the FLSA, and the Court Should Order Notice to All of Defendants' Hourly-Paid Laborer/Mining Employees.**

Plaintiff has provided sufficient evidence,[29] which Defendants have in no way controverted during Phase One discovery,[30] that Plaintiff and the putative Collective Action Members are similarly situated given that they all (1) generally worked over forty hours, (2) performed unifying manual labor duties as non-exempt employees while paid on an hourly basis,[31] and (3) Defendants' uniform policy and/or practice was to require them to work on compensable tasks without pay. This policy and/or practice did not vary based on location where Plaintiff Barrett or Opt-in Plaintiff

---

[28]    *Soto v. Marquez Constr. & Maint., LLC*, No. 20-CV-00101, 2021 WL 3832836, at *2 (W.D. Tex. Apr. 9, 2021) (Griffin, M.J.).

[29]    *See* Ex. B - Barrett Decl.; Ex. C - Owens Decl.; Ex. F – Pl.'s Interrog. Answers; A – IPEC Webpage; https://ipecgroup.com/ (last accessed May 28, 2026).

[30]    *See* Ex. E - Def. IPEC's Interrog. Answers Nos. 5, 6.

[31]    *See* 29 C.F.R. § 541.3(a).

Owens worked,[32] and was applicable to all hourly-paid, nonexempt manual labor employees nationwide who worked for Defendants.

To be sure, each of the categories of off-the-clock tasks that Plaintiff and the putative Collective Action Members performed is compensable. *See, e.g.*, *Steiner v. Mitchell*, 350 U.S. 247, 333-34 (1956) (tasks that are integral and indispensable to an employee's principal activities, such as donning and doffing apparel that is "made necessary by the nature of the work performed," in particularly because of work with toxic or otherwise deleterious substances, are compensable); *accord Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 34 (2014) (favorably citing *Steiner*); 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity […] must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work […] regardless of contract, custom, or practice."); *Miles v. HSC-Hopson Servs. Co, Inc.*, 625 Fed. App'x 636640 n.1 (5th Cir. 2015) (citing regulation relating to propriety of jury instruction); 29 C.F.R. § 785.27 (mandatory meetings directly related to an employee's job are compensable).

Accordingly, notice should issue to:

> **All current and former hourly-paid laborer/mining employees of Defendants who worked over forty (40) hours in any workweek at any time during the three (3) years preceding the date of filing this Action to the present.**

This case does not call for any individualized inquiry as all the Collective Action Members are similarly situated in relevant respects.

### 2.　Defendants' Defenses Can Be Asserted and Determined on a Collective Basis.

---

[32]　*See* Ex. B - Barrett Decl., ¶ 2; Ex. C - Owens Decl., ¶ 2.

15

With respect to Defendants' defenses, first, there are "no apparent 'potentially dispositive, threshold matters,' such as arbitration agreements, misclassification arguments, etc." so the Court may make its ruling based on the declarations and limited evidence before the Court. *See, e.g.*, *Collins v. Pel-State Bulk Plant, LLC*, No. MO:20-CV-00083-DC-RCG, 2021 WL 5234968, at *3 (W.D. Tex. Sept. 29, 2021) (quoting *Swales*, 985 F.3d at 441). Similarly, because all the Collective Action Members are hourly-paid, non-exempt manual labor employees, there is no question that different exemptions could apply to certain but not all of them. *See* 29 C.F.R. § 541.3(a).

Thus, any non-threshold defenses articulated by Defendants will sound in damages, not liability. For instance, Defendant may argue that different Collective Action Members spent different amounts of time doing different tasks. But this perennial argument against notice to collective action members in off-the-clock cases was not resurrected by *Swales*. When Defendants fail to record, or to permit employees to record, all hours of work—they do so at their peril. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) *superseded by statute on other grounds as recognized by Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014) ("the solution [to an employer's failure to keep accurate records] is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records [...]. In such a situation we hold that an employee has carried out his burden if he proves [the amount of uncompensated hours of work] as a matter of just and reasonable inference."); *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 366 (5th Cir. 2023) (quoting *Anderson* and noting that an employer "has 'no right to complain that damages' determined by the district court inevitably will 'lack the exactness and precision of the measurement that would be possible had [it] kept records in accordance with the [FLSA's] requirements."). And where employers take such risks, the result similarly is not to

16

penalize the collective action mechanism. On the contrary, the Supreme Court has long held that off-the-clock cases may be proven collectively through representative evidence. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452-53 (2016) (where an employer fails to maintain accurate records of time worked, "representative evidence [is] a permissible means of making [a showing of time spent working off-the-clock]").

Accordingly, any such defenses are not a reason to deny issuance of notice, even under *Swales*. *See, e.g.*, *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *9 (W.D. Tex. May 28, 2021) ("When plaintiffs' 'common issues predominate over individual damage calculations,' class certification is proper, and the plaintiffs may proceed in a collective action." (quoting *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452-53 (2016)))).

Given that all the putative Collective Action Members were subject to a common policy and/or practice that violates the FLSA (*i.e.*, no disparate factual or employment issues) Defendants' defenses will not vary between them, and that fairness and procedural concerns do not militate against the issuance of notice. Plaintiff has satisfied the *Swales* standard, and the Court should, respectfully, order issuance of notice to the Collective Action Members in this case.

**C.      Plaintiff's Proposed Notice, Consent Form, and Procedure for Dissemination of Notice of the Pendency of this Lawsuit Are Proper.**

*Swales* has not disrupted the standard methods and procedures of dissemination of notice to putative collective action members in place prior to *Swales*. *See T.S. by and through P.O. v. Burke Foundation*, 521 F. Supp. 3d 691, 699 (W.D. Tex. 2021) (granting notice to class members "via all reasonable methods" including mail, email, social media, text message, and other

methods). Plaintiff's proposed Notice and Consent form[33] are neutral, substantially similar to those that have been approved in hundreds of cases, and Plaintiff's request for a 90-day opt-in period with a reminder postcard is commonly approved. *See, e.g.*, *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092-MAC, 2022 WL 4089819, at *12 (E.D. Tex. Aug. 9, 2022), *report and recommendation adopted by* 2022 WL 4084420 (E.D. Tex. Sept. 4, 2022).

## VII.    CONCLUSION

Plaintiff has shown that notice to the putative collective action members is appropriate under *Swales*. Accordingly, Plaintiff respectfully requests that the Court order Defendants to produce the names, email addresses, cell phone numbers, and home addresses of the identified putative collective action members, as is routine in FLSA cases. Plaintiff also requests a 90-day opt-in period for those individuals to decide whether to join this lawsuit. Finally, Plaintiff asks the Court to enter the attached proposed order setting the notice schedule and approving the proposed Notice and Consent to Join Wage Claim forms submitted with this Motion.

Plaintiff requests such other and further relief to which he has shown himself justly entitled.

Dated: May 28, 2026                           Respectfully submitted,

By:    s/Melinda Arbuckle
Melinda Arbuckle
State Bar No. 24080773
marbuckle@wageandhourfirm.com
Ricardo J. Prieto
State Bar No. 24062947
rprieto@wageandhourfirm.com
Wage and Hour Firm
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
(214) 489-7653 – Telephone

---

[33]    Ex. G - Notice and Consent Form.

18

(469) 319-0317 – Facsimile

ATTORNEYS FOR PLAINTIFF AND PUTATIVE
COLLECTIVE ACTION MEMBERS

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Defendants regarding this Motion via email on May 28, 2026. Defendants oppose the relief requested in this Motion.

s/Melinda Arbuckle
Melinda Arbuckle

## CERTIFICATE OF SERVICE

On May 28, 2026, I filed the foregoing document with the Clerk of Court using the CM/ECF method of the Court. I certify that all counsel of record were served electronically thereby.

s/Melinda Arbuckle
Melinda Arbuckle

19